IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROSE CARGILE, ) | |
| ) | |
| *Plaintiff,* ) | |
| vs. ) | Case No: |
| ) | |
| THE UNIVERSITY OF KANSAS ) | |
| HEALTH SYSTEM ) | |
| ) | **Jury Trial Demanded** |
| ) | |
| Serve: *Registered Agent* ) | |
| 112 S.W. Seventh Street Ste.C ) | |
| Topeka, Kansas 66603 ) | |
| ) | |
| *Defendant.* ) | |

## COMPLAINT

Plaintiff Rose Cargile ("Plaintiff"), by and through her undersigned counsel, for her Complaint against The University of Kansas Health System states and alleges as follows:

### Nature of Action

1. This is an action for legal and equitable relief to address the deprivation of Plaintiff's civil rights based on age discrimination and retaliation in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 ("ADEA").

### Parties

2. Plaintiff is an individual over forty (40) years old and a resident of Grain Valley, Missouri.

3. At all times pertinent to this Complaint, Plaintiff was an employee within the meaning of the ADEA.

4. Defendant The University of Kansas Health System is a domestic for-profit corporation licensed to do business in the State of Kansas and can be served by serving its Registered Agent at the address set forth in the caption.

5. At all times relevant hereto, Defendant The University of Kansas Health System is an employer governed by ADEA.

6. On information and belief, The University of Kansas Health System employs (and at all times relevant has employed) more than 500 employees.

## Jurisdiction and Venue

7. The claims alleged arise out of Plaintiff's employment with Defendant at its Overland Park, Kansas location at KU Breast Imaging, 10710 Nall Avenue, Overland Park, Kansas.

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claim arises under the laws of the United States.

9. This Court has general personal jurisdiction over Defendant because it is subject to service of process in the State of Kansas and has affiliations with the State of Kansas that are so continuous and systematic as to render it essentially at home in this State. This Court has specific personal jurisdiction over Defendant because the claim against it arises out of its acts in the State of Kansas that were purposefully directed at a resident of this State, including the commission of tortious acts.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claim against Defendants occurred in this judicial district.

## Administrative Procedures

11. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about **May 28, 2024**. A true and correct copy of her charge is attached as **Exhibit A** and is incorporated herein by reference.

12. Plaintiff filed a timely amended Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about **January 17, 2025**. A true and correct copy of her charge is attached as **Exhibit B** and is incorporated herein by reference.

13. Plaintiff filed a timely amended Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about **April 30, 2025.** A true and correct copy of her charge is attached as **Exhibit C** and is incorporated herein for reference.

14. The EEOC issued Plaintiff a Notice of Right to Sue for all charges on **March 10, 2025 and May 12, 2025.** A true and correct copy of those notices are attached as **Exhibit D** and are incorporated herein by reference.

15. This lawsuit has been timely filed with this Court, and Plaintiff has fully complied with all administrative prerequisites before filing this action.

## General Allegations

16. Plaintiff is an individual over forty (40) years of age.

17. At the time of these allegations contained in this Complaint Plaintiff was over 60 years of age.

18. Plaintiff has worked for Defendants since 2014.

19. For the last ten (10) years Plaintiff worked in the Kansas University Breast Cancer unit as a Mammographer.

20. On or about December 26, 2023, a position for a Mammography Supervisor opened for application.

21. Plaintiff applied for the Mammography Supervisor position in or around late December of 2023 or January of 2024.

22. Plaintiff was well qualified for the position of Mammography Supervisor.

23. During the application process, Plaintiff was told by at least two different employees that the operations manager, Ginny Gordanier had told them that she wanted to hand the job over to a "younger generation."

24. In step with this discriminatory attitude, Ms. Gordanier encouraged and instructed a 27-year-old employee, Tiffany, who was not qualified for the position, to apply for the job.

25. Plaintiff was invited to interview for the Mammography Supervisor Position on in or around early 2024.

26. During Plaintiff's interview, Ms. Gordanier made comments that Plaintiff's "lack of computer skills" might be a reason Plaintiff would not receive the position.

27. Plaintiff knew these comments to be coded age discrimination language, especially given Plaintiff's computer skills were not deficient.

28. Plaintiff received notification she did not receive the Mammography Supervisor in or around late January 2024 or early February 2024.

29. Despite Plaintiff's clear qualifications for the position, the position was given to Tiffany, who did <u>not</u> meet the requirements for the position.

30. After learning of Tiffany's promotion, Plaintiff texted Ms. Gordanier and informed her that Plaintiff would be reporting Ms. Gordanier to Human Resources for age discrimination.

31. In or around February of 2024 Plaintiff made a clear and specific complaint to Human Resources of age discrimination.

32. In Plaintiff's complaint she specifically complained that Ms. Gordanier had told another employee that Ms. Gordanier wanted to "hand over the reins to the younger generation", that Tiffany was 28 years old and not qualified for the position and received the job anyway, that in her interview and other times, Ms. Gordanier referred to Plaintiff several times as a "well-seasoned" vet, coded language for being old, and that when Plaintiff asked why she did not receive the position, she was told that her "computer skills" were at issue.

33. An investigation was conducted and Plaintiff's complaint of age discrimination in or around February of 2024.

34. As a result of their investigation, Human Resources revoked the job offer of Mammography Supervisor to Tiffany.

35. However, despite Plaintiff's application being the only one left, she was told she had to reapply for the position.

36. Plaintiff reapplied on or about March 6, 2024, and was told a decision would be made in the following weeks.

37. In or around March 12, 2024, Plaintiff had an additional conversation with Human Resources and informed them that although they did not find "evidence" of age discrimination, she disagreed and felt she had been discriminated against. She told Human Resources she just wanted a fair shot at the position.

38. In or around May of 2024, a decision still had not been made.

39. In response to the radio silence, Plaintiff reached out to Human Resources and was told that due to "financial pressures" the job position had not been approved by Defendant.

40. Suddenly, however, in mid-June 2024, Ms. Gordanier showed up to Plaintiff's location along with representatives from Human Resources and informed Plaintiff that the position of Mammography Supervisor had been filled by an outside applicant.

41. Not only was Plaintiff denied the position for which she was qualified, but Ms. Gordanier, in retaliation for Plaintiff's age discrimination complaint, assigned Plaintiff to Quality Control.

42. By assigning Plaintiff to Quality Control, Ms. Gordanier intended to overwhelm Plaintiff because these responsibilities added more job duties for Plaintiff.

43. Ms. Gordanier was clearly acting in retaliation because no other similarity situated employees were assigned extra duties at this time and it was only after Plaintiff filed her complaints of age discrimination.

44. Plaintiff informed Human Resources of Ms. Gordanier's retaliatory conduct, but Human Resources did nothing, thereby condoning Ms. Gordanier's retaliatory actions,

45. In or around August of 2024, Plaintiff was, again, subjected to further retaliation from Ms. Gordanier for Plaintiff's complaints of age discrimination and retaliation when Ms. Gordanier assigned Plaintiff even more tasks; this time it was to complete schedules.

46. This newly added task from Ms. Gordanier added to Plaintiff's already overwhelming workload of completing quality control testing in the morning, making it nearly impossible to complete both.

47. When Plaintiff brought up this impossible task conundrum to management she was told she could complete all tasks in between patients.

48. This was also impossible as Plaintiff saw patients every fifteen minutes.

49. When Plaintiff again informed management of the impossibility of completing the assigned tasks, she was told she could complete those tasks on her lunch break.

50. No other similarity situated employees were asked to complete job assignments during their lunch breaks.

51. During this time, Plaintiff was assigned a new supervisor, Christian Odle.

52. All of Plaintiff's similarly situated co-workers were able to choose whether they wanted to have a "one-on-one" meeting with the new supervisor.

53. However, Plaintiff was told it was mandatory for her to have a "one-on-one".

54. Upon meeting with the new supervisor, Plaintiff was asked if there was anything she would change in the workplace.

55. Plaintiff informed her new supervisor that she would change management, due to the discriminatory and retaliatory actions she faced.

56. Plaintiff was disciplined for this comment for being "negative" and given a written warning.

57. Defendant also falsely stated that Plaintiff refused to do the schedule task, which was not true, as Plaintiff simply stated she had concerns completing all her newly assigned tasks.

58. Plaintiff continued to face retaliation in the workplace and was forced to continue working under the extra tasks that were given to her, causing her extreme stress and anxiety.

59. On or about March 27, 2025, Plaintiff was subjected to another act of retaliation when she faced a write up over a patient complaint. The patient was upset that they had been sent to the wrong location. Although Plaintiff did her best to accommodate and assist the patient, they lodged a complaint.

60. Plaintiff was written up even though the patient being sent to the wrong location was not her fault. This was the second time Plaintiff was written up after her complaints of discrimination and retaliation, despite the fact she has never been written up in her ten year tenure.

61. During the meeting for her write up, Plaintiff was told that if she had any other "incidents", she would be fired. Christian Odle told Plaintiff she "didn't know how Plaintiff could work like that" and that Plaintiff would be watched very closely.

62. On information and belief, in sharp contrast, a younger tech received a complaint from a patient of a sexual nature, and she was not written up.

63. Plaintiff attempted to challenge her write up and filed a formal complaint of retaliation on or about March 28, 2025.

64. Rather than take her complaints seriously, Plaintiff was told she needed to file a different form through "proper channels" to contest the write up. She was not told when she received the write up there was a particular policy governing contesting write ups, nor was she told there was a specific, short time period in which she could do so.

65. Plaintiff was one day past the time to file the paperwork to contest the write up, but went ahead and submitted the form. She asked human resources to please consider her paperwork since she was only one day past the deadline and was unaware of the specific process. Her request was denied.

66. Additionally, Plaintiff continued to have more responsibilities placed on her, including additional quality control tests that were not required prior to her filing her charges of discrimination.

67. On information and belief, other facilities are given more time to complete their quality control. In contrast, Plaintiff has had time taken away from her to complete quality control, while additional testing was added.

68. Plaintiff has been placed under extreme scrutiny, to the point of receiving emails that she made a small error she forgot to document in the quality control book.

69. In contrast, Toni, a younger tech, made the same mistake and was not reprimanded.

70. Additionally, at least three patients have submitted complaints regarding Toni, a younger tech, being "rough" during exams , but Toni has not been written up.

71. As an example of the continued age discrimination and retaliation Plaintiff has faced - the older techs have been complaining for years that the doors are not wide enough to fit wheelchairs through, making it difficult to complete their task in a safe manner. Nothing was ever done. Recently, a younger tech, Tiffany, reported that she had trouble transferring a wheelchair through the doorway. Promptly after Tiffany reported her concern at a meeting, a plan was put into action to widen the doorways, despite the fact the older techs in the facility have been bringing up this issue for years.

72. Plaintiff continues to experience age discrimination and retaliation in the workplace, causing her extreme stress and anxiety. On information and belief, Defendant has engaged and continues to engage in a pattern and practice of age discrimination and retaliation.

## Count I
**Age Discrimination (ADEA)– Failure to Hire**

73. Plaintiff incorporates by reference all paragraphs and allegations in this Complaint as though fully set forth herein.

74. Defendant is an "employer" within the meaning of the ADEA.

75. Plaintiff, as an individual over the age of 40, is a member of a protected class within the meaning of the ADEA.

76. Defendant illegally discriminated against plaintiff because of her age by failing to hire her for the Mammography Supervisor position, subjecting her to discriminatory age-based remarks, treating younger colleagues in a preferential manner, failing to take preventative steps to quash the discriminatory conduct, and causing her some harm in assigning her impossible tasks.

77. But for Plaintiff's age, Defendant would not have taken the above discriminatory actions.

78. Plaintiff is a skilled, experienced mammographer with a solid work record.

79. Defendant knew or should have known of the discrimination against Plaintiff as alleged above and because of her age failed to implement prompt and effective remedial action.

80. Defendant failed to protect Plaintiff and others from discrimination and harassment.

81. All actions or inactions of or by Defendant occurred by Defendant itself or through its board, board members, agents, administrators, managers, faculty, and/or employees acting within the course and scope of their employment as set forth herein.

82. Defendant's actions alleged herein caused and continue to cause Plaintiff to suffer damages, including, but not limited to, reputational harm, emotional distress, humiliation, embarrassment, mental anguish, damage to her job record, lost income, anxiety, loss of enjoyment of life, depression, and discomfort.

83. While engaging in the conduct alleged herein, Defendant acted with a reckless or conscious disregard for Plaintiff's rights and for the rights of others. Therefore, Defendant is liable for punitive damages for punishment and to deter Defendant and others from repeating this type of behavior in the future.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count I of her complaint, finding that she has been subjected to unlawful age discrimination in violation of the ADEA, for an award of compensatory and punitive damages, and for her reasonable attorneys' fees, costs, pre- and post-judgment interest as allowed by law, and for such other and further relief as this Court deems just and proper, including equitable relief.

## Count II
### Age Discrimination (ADEA)– Retaliation

84. Plaintiff incorporates by reference all paragraphs and allegations in this Complaint as though fully set forth herein.

85. Plaintiff opposed and reported unlawful discrimination in the workplace by bringing these issues to management and/or Human Resources.

86. Plaintiff's opposition to and reports of discrimination and retaliation in the workplace constituted protected activities.

87. By reason of Plaintiff's opposition and reports, Defendant retaliated against Plaintiff, by including but not limited to subjecting her to discriminatory age-based remarks, treating younger colleagues in a preferential manner, failing to take preventative steps to quash the discriminatory conduct, writing her up, placing her under extreme

scrutiny and telling her she would be "watched closely", and causing her some harm in assigning her impossible tasks.

88. Plaintiff's opposition to and reports of discrimination were causally connected and a motivating factor for Defendant's actions.

89. Defendant failed to protect Plaintiff and others from retaliation and harassment.

90. All actions or inactions of or by Defendant occurred by Defendant itself or through its board, board members, agents, administrators, managers, faculty, and/or employees acting within the course and scope of their employment as set forth herein.

91. Defendant's conduct was outrageous, intentional, willful, or shows an evil motive or reckless indifference or conscious disregard for Plaintiff's rights and right of others, and therefore Defendant is liable for punitive damages for punishment and deterrence purposes.

92. Defendant's actions alleged herein caused and continue to cause Plaintiff to suffer damages, including, but not limited to, reputational harm, emotional distress, humiliation, embarrassment, mental anguish, damage to her job record, lost income, anxiety, loss of enjoyment of life, depression, and discomfort.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant on Count II of her complaint, finding that she has been subjected to retaliation in violation of the ADEA, for an award of compensatory and punitive damages, and for her reasonable attorneys' fees, costs, pre- and post-judgment interest as allowed by law, and for such other and further relief as this Court deems just and proper, including equitable relief.

## Prayer for Relief

WHEREFORE, Plaintiff, Rose Cargile, respectfully requests that this Court enter judgment against Defendant the Kansas University Health System for Counts I and II and for actual and special damages including emotional distress, back pay and benefits with interest, reinstatement or front pay and benefits, punitive damages, attorneys' fees and costs incurred, and for such other and further relief as the Court deems just and necessary.

## Demand for a Jury Trial

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

## Designated Place of Trial

Plaintiff, by and through counsel, hereby designates the United States District Court for the District of Kansas at Kansas City as the place of trial.

Respectfully Submitted,

WHITE, GRAHAM, BUCKLEY, & CARR L.L.C.

By: /s/ *Taylor M. Arri*_____
    TAYLOR M. ARRI         72685
    DEBORAH J. BLAKELY  47138
    19049 E. Valley View Pkwy, Suite C
    Independence, Missouri 64055
    (816) 373-9080  / Fax (816) 373-9319
    tarri@wagblaw.com
    dblakely@wagblaw.com

    BROWN, CURRY & DUGGAN, LLC

    _____
    Sarah J. Duggan

        Kansas Federal Bar Number #79092
        1600 Genessee STE 956
        Kansas City, Missouri 64101
        Ph: 816-756-5458
        Attorneys for Plaintiff, Rose Cargile
        sduggan@brownandcurry.com